**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER JONES, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 22 CV 6999 |
| | ) | |
| CITY OF CHICAGO, Former CHICAGO | ) | |
| POLICE SERGEANT RONALD WATTS, | ) | Honorable Rebecca R. Pallmeyer |
| Former CHICAGO POLICE | ) | |
| OFFICER KALLATT MOHAMMED, | ) | |
| Former CHICAGO POLICE | ) | |
| SERGEANT ALVIN JONES, | ) | |
| OFFICER ELSWORTH SMITH JR., | ) | (This case was part of *In re: Watts* |
| OFFICER DOUG NICHOLS, | ) | *Coordinated Pretrial Proceedings*, |
| OFFICER BRIAN BOLTON, | ) | Master Docket No. 19-cv-1717) |
| OFFICER MANUEL LEANO, | ) | |
| OFFICER LAMONICA LEWIS, | ) | |
| and other as-yet-unidentified officers of the | ) | |
| Chicago Police Department, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANT OFFICERS' ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S COMPLAINT**

Defendants, Alvin Jones, Elsworth Smith Jr., Douglas Nichols, Brian Bolton, Manuel Leano and Lamonica Lewis (collectively "Defendant Officers") by and through their undersigned counsel, Hale & Monico LLC, hereby submit the following Answer and Affirmative Defenses to Plaintiff's Complaint as follows:

1.      Since January 2016, the Circuit Court of Cook County, Illinois has overturned more than 200 wrongful convictions based on the staggering corruption of former Sergeant Ronald Watts and his corrupt team of Chicago police officers.

**ANSWER:**   Defendant Officers admit that a number of convictions have been vacated

1

by Cook County Circuit Court judges. Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph where directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.

2.       Christopher Jones was convicted of a crime he did not commit, and his wrongful conviction is one of many caused by the Watts team that were later overturned.

**ANSWER:**   Defendant Officers admit that Plaintiff pled guilty to a crime he committed in case number 08CR11303.  Defendant Officers deny the remaining allegations in this paragraph.

3.       The crime for which Mr. Jones was framed never happened; it was completely fabricated by corrupt Chicago police officers.

**ANSWER:**   Defendant Officers deny the allegations in this paragraph.

4.       Mr. Jones was arrested on May 31, 2008.

**ANSWER:**   Defendant Officers admit the allegations in this paragraph.

5.       Mr. Jones's arrest occurred near the Ida B. Wells housing complex, an area that was heavily policed by corrupt Chicago police officers.

**ANSWER:**   Defendant Officers admit that Plaintiff was initially arrested at the Ida B. Wells housing complex in the area of 3555 S. Giles Chicago, Illinois. Defendant Officers deny the remaining allegations in this paragraph that are directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

2

1.[sic][1]The corrupt officers sought bribes, planted evidence, and falsely accused many people, including Mr. Jones, of possessing guns or drugs.

**ANSWER:** Defendant Officers deny they sought bribes, planted evidence, and falsely accused people, including Plaintiff, of possessing guns or drugs and therefore deny the allegations in this paragraph that are directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

6. The type of encounter these police officers had with Mr. Jones was unfortunately quite common, and the consequences were dire: false arrests, criminal proceedings, incarcerations, and a subsequent felony record.

**ANSWER:** Defendant Officers deny the allegations in this paragraph that are directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

7. Believing that he faced no chance of winning at trial after his May 31, 2008 arrest, Mr. Jones eventually pled guilty to the false charge.

**ANSWER:** Defendant Officers admit that Plaintiff pled guilty and was convicted of a felony gun charge in 08CR11303. Defendant Officers deny that Plaintiff was falsely charged. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

8. After Mr. Jones had completed his sentence, Defendants Watts and Mohammed were caught on tape engaging in the exact type of misconduct that Mr. Jones has alleged.

---

[1] Plaintiff's complaint contains a numbering error in its paragraphs. This paragraph should be numbered "6" but instead is identified as a second paragraph "1." In an effort to reduce confusion, this Answer will follow the

**ANSWER:** Defendant Officers, on information and belief, admit that in February 2012, Defendants Watts and Mohammed were charged with theft of government funds arising from a November 2011 incident they were involved in while they were off-duty. Defendant Officers deny the remaining allegations in this paragraph.

9. The federal government charged Watts and Mohammed criminally, and the disgraced officers pled guilty and served time in federal prison.

**ANSWER:** Defendant Officers, on information and belief, admit that Defendants Watts and Mohammed were charged by the federal government, pled guilty to the charge and served time in federal prison for a single count of theft of government funds in connection with conduct that occurred in November 2011 while they were off-duty. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

10. Since then, evidence has come to light showing that Defendant Watts and his crew engaged in a pattern of criminal misconduct against public housing residents and visitors, and that Chicago Police Department officials have long known about that pattern.

**ANSWER:** Defendant Officers deny they engaged in any misconduct, criminal or otherwise, and deny they had knowledge of any pattern of criminal misconduct allegedly engaged in by others and therefore deny the remaining allegations in this paragraph that are directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

---

numbering of the paragraphs as set forth in the complaint.

4

11.     The scope of this misconduct cannot be overstated.

**ANSWER:**   Defendant Officers deny they engaged in any misconduct, criminal or otherwise, and therefore deny the allegations in this paragraph that are directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

12.     For example, the Chief Justice of Illinois' Court of Claims has written that "many individuals were wrongfully convicted," explaining that "Watts and his team of police officers ran what can only be described as a criminal enterprise right out of the movie 'Training Day.'"

**ANSWER:**   Defendant Officers deny they engaged in misconduct, criminal or otherwise, deny were involved with or ran a criminal enterprise, deny that Plaintiff was wrongfully convicted, deny they participated in police corruption, and deny any remaining allegations in this paragraph that are directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

13.     The Illinois Appellate Court, too, has weighed in on the scope of the scandal, repeatedly calling Watts and his team "corrupt police officers" and "criminals" and chastising the City's police disciplinary oversight body for doing "nothing to slow down the criminals" and their rampant misconduct and perjury.

**ANSWER:**   Defendant Officers deny they were corrupt, deny they are or were criminals, deny that they committed misconduct and perjury, and further deny any other allegations in this paragraph directed at them. Defendant Officers lack knowledge or information

5

sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

14.     On or around November 16, 2017, the Cook County State's Attorney Office ("CCSAO") successfully moved to vacate the convictions of fifteen (15) individuals framed by the Watts outfit.

**ANSWER:**   Defendant Officers admit that on or after November 16, 2017, a Cook County Circuit Court judge vacated certain convictions of 15 individuals. Defendant Officers deny they engaged in misconduct, deny they framed anyone and deny any remaining allegations in this paragraph that are directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

15.     In light of that decision by the CCSAO and recognizing the scope of misconduct that the City had allowed to flourish more than a decade unabated, fifteen (15) members of the Watts crew were placed on desk duty.

**ANSWER:**   Defendant Officers admit that, at certain times, they have performed administrative duties.  Defendant Officers deny they engaged in misconduct and therefore deny the remaining allegations in this paragraph.

16.     Since then, previously convicted petitioners and the CCSAO have successfully moved to vacate many more convictions.

**ANSWER:**   Defendant Officers admit that convictions of other individuals have been vacated by Cook County Circuit Court judges. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph. Defendant Officers deny they engaged in misconduct and therefore deny any

6

remaining allegations in this paragraph that are directed against them.

17. In recognition of the scope of their misconduct, the CSSAO will no longer call many of Watts's team – including at least some Defendants in this case – as witnesses "due to concerns about [their] credibility and alleged involvement in the misconduct of Sergeant Watts."

**ANSWER:** Defendant Officers, on information and belief, admit the existence of correspondence dated November 17, 2017 from Joe Magats, then Chief of the Criminal Prosecutions Bureau of the CCSAO, to Charise Valente at the Chicago Police Department's Office of Legal Affairs, pertaining to certain police officers who worked in Units 715 and/or 264. Defendant Officers deny they engaged in misconduct and therefore deny the remaining allegations in this paragraph.

18. Through this lawsuit, Mr. Jones seeks accountability and compensation for the damage caused by Defendants' misconduct.

**ANSWER:** Defendant Officers admit that this action seeks monetary damages, but deny liability to Plaintiff for any of the claims asserted, deny Plaintiff is entitled to the damages sought in the Complaint and deny any remaining allegations in this paragraph.

**Jurisdiction and Venue**

19. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Constitution of the United States.

**ANSWER:** Defendant Officers admit this action for money damages includes claims that purport to be based on 42 U.S.C. § 1983. Defendant Officers deny the remaining allegations in this paragraph.

20. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and

state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Chicago is a municipal corporation located in this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**ANSWER:** Defendant Officers admit this Court has jurisdiction over Plaintiff's federal and state law claims and admit that venue is proper for the claims asserted in this action. Defendant Officers also admit that the City of Chicago is a municipal corporation located in this judicial district. Defendant Officers deny any liability for any and all claims asserted in this action and therefore deny any remaining allegations in this paragraph.

21. Mr. Jones is 41 years old.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth as to the allegations in this paragraph.

22. At all times relevant to this complaint, Defendants former Chicago Police Sergeant Ronald Watts, former Officer Kallatt Mohammed, former Chicago Police Sergeant Alvin Jones, Officer Elsworth Smith Jr., Officer Doug Nichols, Officer Brian Bolton, Officer Manuel Leano, and Officer Lamonica Lewis were police officers employed by the City of Chicago and acting within the scope of their employment and under the color of law. Collectively, these individual Defendants are referred to as Defendant Officers.

**ANSWER:** Defendant Officers admit the allegations directed at them. With respect to the remaining individual officer defendants, Defendant Officers admit, upon information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting in the course and scope of their

employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

23. At all relevant times, Defendant Watts was a leader of the Second District Tactical Team that worked in and around the Ida B. Wells housing complex.

**ANSWER:** Defendant Officers admit that in 2008, Defendant Watts was a Chicago Police officer assigned to the Second Police District, the boundaries of which included the Ida B. Wells housing complex. Defendant Officers further admit Defendant Watts was one of the sergeants assigned to supervise tactical teams working out of the Second District. Defendant Officers deny any remaining allegations in this paragraph.

24. Defendants Mohammed, Jones, Smith Jr., Nichols, Bolton, Leano, and Lewis worked on Watts's tactical team.

**ANSWER:** Defendant Officers admit that at various times Mohammed, Jones, Smith Jr., Nichols, Bolton, Leano, and Lewis were assigned to a team supervised by Defendant Watts. Defendant Officers deny any remaining allegations in this paragraph.

25. Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois. The City operates the Chicago Police Department ("CPD") and is responsible for the policies, practices, and customs of the City and the CPD.

**ANSWER:** Defendant Officers admit the allegations in this paragraph.

### Factual Background

26. During the 2000s, a tactical team of CPD officers, led by Defendant Watts, actively patrolled the Ida B. Wells complex and surrounding areas.

9

**ANSWER:** Defendant Officers admit that the Ida B. Wells Housing complex was actively patrolled by Chicago police offices, including a tactical team for which Defendant Watts was a supervising sergeant. Defendant Officers deny any remaining allegations in this paragraph.

27. Watts and his tactical team members were well known to the residents of Ida B. Wells and the surrounding area.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

28. Watts and his tactical team members maintained a visible presence in the Ida B. Wells area. The Watts team had a reputation in the community for harassing, intimidating, and fabricating criminal charges against the area's residents and visitors.

**ANSWER:** Defendant Officers deny they harassed, intimidated, or fabricated criminal charges against the area's residents and visitors and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

29. The Watts team's pattern of harassment continued with Mr. Jones.

**ANSWER:** Defendant Officers deny they engaged in a pattern of harassment of Plaintiff, and deny any remaining allegations in this paragraph.

**Mr. Jones Is Framed on May 31, 2008**

30. On May 31, 2008, Mr. Jones had just left his mother's apartment at 3552 S. Calumet Street near the Ida B. Wells housing complex.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

31. Mr. Jones walked outside and encountered some people he knew. He heard

10

someone say that Defendant Watts had stopped them and threatened to arrest them for trespass. As Mr. Jones began walking away, numerous police cars arrived.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

32. Defendant Watts exited one car and instructed everyone to stop. Other police officers exited their cars and detained Mr. Jones and others.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

33. Police officers applied handcuffs to Mr. Jones's wrists and forced him into a paddy wagon.

**ANSWER:** Defendant Officers admit Plaintiff was taken into custody, handcuffed. and subsequently transported in a police vehicle to Chicago Police Department second district. Defendant Officers deny the remaining allegations in this paragraph.

34. Mr. Jones did not have any drugs or illegal contraband in his possession.

**ANSWER:** Defendant Officers admit plaintiff stored heroin and a firearm at his mother's apartment located at 3552 S. Calumet Street Chicago, Illinois. Defendant Officers further admit no drugs or illegal contraband were recovered from Plaintiff when he was first taken into custody at 3555 S. Giles Chicago, Illinois. Defendant Officers deny the remaining allegations of this paragraph.

35. At the police station, Defendant Watts and Defendant Mohammed asked Mr. Jones where the drugs were. Mr. Jones said he did not have any drugs. Defendants Watts and Mohammed searched Mr. Jones and found nothing illegal.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

36. Defendant Watts asked Mr. Jones where the money was. Mr. Jones said he did

11

not have any money. Defendant Watts said that if Mr. Jones wanted to go home, then he had to give him money.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

37. Defendants Watts took Mr. Jones out of the bathroom and told the other officers at the station to search for a black box. The officers searched the station, and then one officer retrieved a black box from beneath his desk and gave it to Defendant Watts.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

38. Defendant Watts opened the box and dumped its contents, which appeared to be small baggies containing drugs, onto a desk and then looked at Mr. Jones.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

39. Mr. Jones was brought to a cell. Later, during processing, Mr. Jones learned that Defendant Watts had charged him with unlawful use of a weapon and heroin possession.

**ANSWER:** Defendant Officers admit Plaintiff was charged with unlawful possession of firearm by a convicted felon and possession of a controlled substance. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**Mr. Jones is Prosecuted, Convicted, and Sentenced for the 2008 Arrest**

40. The Defendant Officers prepared false and fabricated police reports related to this arrest.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

41. On the basis of these false reports, Mr. Jones was prosecuted for unlawful use of a weapon and heroin manufacturing and delivery.

12

**ANSWER:** Defendant Officers admit that plaintiff was prosecuted for the drug and firearm crimes he committed on May 31, 2008. Defendant Officers deny the remaining allegations in this paragraph.

42. Even though Mr. Jones was innocent of the charges, knowing that he risked a lengthy prison term if he went to trial and lost, Mr. Jones accepted a plea deal.

**ANSWER:** Defendant Officers admit on information and belief plaintiff pleaded guilty to and was convicted of a felony gun charge in Case No. 08 CR 11303 following a court hearing in which Judge Nicholas Ford confirmed no threats or promises had been made in exchange for the plea, found that plaintiff's guilty plea was given freely and voluntarily, and established that a sufficient factual basis existed for the plea. Defendant Officers further admit on information and belief Judge Ford advised plaintiff during that hearing of the potential penalties he faced if he went to trial and was found guilty. Defendant Officers deny that plaintiff was innocent of the charges. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

43. Defendant Officers never disclosed to prosecutors that they had fabricated evidence and falsified police reports related to Mr. Jones's arrest.

**ANSWER:** Defendant Officers deny they fabricated evidence or falsified any police reports related to Plaintiff's arrest, deny any knowledge of alleged misconduct by others and deny any remaining allegations in this paragraph.

44. Defendant Officers never disclosed to the prosecutors any of their misconduct described herein. If the prosecutors had known that Defendant Officers fabricated evidence and committed the other misconduct described herein, they would not have pursued the prosecution

13

of Mr. Jones.

**ANSWER:** Defendant Officers deny they fabricated evidence, deny they committed any other alleged misconduct, deny knowledge of alleged misconduct by others and deny any remaining allegations in this paragraph.

45. Mr. Jones served four months in Cook County Jail and was then sentenced to 121 days in Cook County Boot Camp. He served months in prison before being sent to Boot Camp for the remainder of his sentence.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

### Defendant Watts and His Team Engaged in a Pattern of Misconduct for at Least a Decade, All Facilitated by the City's Code of Silence

46. It was no secret within the CPD that Watts and his crew engaged in the type of misconduct described herein.

**ANSWER:** Defendant Officers deny they were engaged in the alleged misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph where they apply to other defendants.

47. Government officials, including City of Chicago employees, knew about Watts's and his crew's alleged misconduct as early as 1999.

**ANSWER:** Defendant Officers deny they were engaged in any alleged misconduct. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

14

48.     Shortly thereafter, an FBI investigation of Watts and his crew was underway. The FBI investigation took place with the knowledge and occasional participation of the Chicago Police Department's Internal Affairs Division ("IAD").

**ANSWER:**    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

49.     Because IAD was kept abreast of the FBI investigation, during the times complained of, City officials—including but not limited to the head of IAD and the CPD superintendents—were aware of credible allegations that Watts and his team were extorting and soliciting bribes from drug dealers.

**ANSWER:**    Defendant Officers deny they were extorting and soliciting bribes from drug dealers and deny any allegations of misconduct directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

50.     Watts used a drug dealer named "Big Shorty" to run drugs at the Ida B. Wells complex. Big Shorty would sell the drugs, turning profits over to Watts in exchange for Watts's protection. Watts used drug dealers as phony informants to conduct illegal searches. Watts also offered to release arrestees if they provided him with weapons, drugs, or money.

**ANSWER:**    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

51.     Targets of the FBI investigation extended beyond Watts to members of Watts's tactical team, including some of the Defendant Officers named herein.

**ANSWER:**    Defendant Officers lack knowledge or information sufficient to form a

15

belief as to the truth of the allegations in this paragraph.

52.     During the times complained of, the FBI investigation generated evidence showing that Watts engaged in systematic extortion, theft, the possession and distribution of drugs for money, planting fake evidence on subjects, and paying informants with drugs.

**ANSWER:**   Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

53.     Investigators also determined that Watts and his subordinates had engaged in these activities for years.

**ANSWER:**   Defendant Officers deny they engaged in extortion of drug dealers, theft, the possession and distribution of drugs for money, planting drugs on subjects, and paying informants with drugs and all other allegations of misconduct directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**Watts and Mohammed are Charged with Federal Crimes**

54.     In 2012, after at least a decade of engaging in criminal misconduct, Defendants Watts and Mohammed were caught red-handed, shaking down a person they thought was a drug courier but who was actually an agent for the FBI.

**ANSWER:**   Defendant Officers, on information and belief, admit that Watts and Mohammed were charged by the federal government, pled guilty and served time in federal prison for a single count of theft of government funds in connection with an incident that occurred in November 2011 while they were off-duty. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this

16

paragraph.

55.     The U.S. government subsequently charged Watts and Mohammed with federal crimes.

**ANSWER:**    Defendant Officers, on information and belief, admit that the United States government charged Watts and Mohammed with a single count of theft of government funds in connection with an incident that occurred in November 2011 while they were off duty.

56.     Watts and Mohammed both pled guilty to federal criminal charges and were sentenced to terms of imprisonment. *See United States v. Watts,* No. 12- CR-87-1 (N.D. Ill.); *United States v. Mohammed*, No. 12-CR-87-2 (N.D. Ill.).

**ANSWER:**    Defendant Officers, upon information and belief, admit that Watts and Mohammed each pled guilty to a single count of theft of government funds and were sentenced to terms of imprisonment.

57.     In its sentencing memorandum in the criminal case against Watts, the government explained that "[f]or years the defendant [Watts] used his badge and his position as a sergeant with the Chicago Police Department to shield his own criminal activity from law enforcement scrutiny." Watts's crimes included "stealing drug money and extorting protection payments" from the individuals he was sworn to protect and serve.

**ANSWER:**    Defendant Officers lack knowledge or information sufficient to form a belief as to truth of the allegations in this paragraph.

58.     The government revealed that, for years, Defendants Watts and Mohammed extorted tens of thousands of dollars in bribes from individuals at the Ida B. Wells public housing complex on numerous occasions as part of their duties with the CPD.

17

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to truth of the allegations in this paragraph.

59. During the sentencing hearing, the government urged Judge Sharon Johnson Coleman to "consider the other criminal conduct that the defendant [Watts] engaged in throughout the course of his career as a police officer," specifically noting that during the federal investigation, Watts "did other things such as putting a false case on the confidential source that was involved in our investigation. Watts had him arrested on drug charges. And the source . . . felt he had no chance of successfully fighting that case, so he pled guilty to a crime he didn't commit." The federal prosecutor wondered aloud "how many times [Watts] might have done something similar when the government was not involved."

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to truth of the allegations in this paragraph.

60. Following the federal indictments of Watts and Mohammed, City officials made efforts to downplay the magnitude of Watts's criminal enterprise.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

61. Notwithstanding the evidence investigators had amassed over the years pointing to a wide, decade-long criminal enterprise, CPD Superintendent Garry McCarthy publicly stated, "There is nobody involved other than the two officers who were arrested." As described in more detail below, McCarthy was wrong.

**ANSWER:** Defendant Officers deny they engaged in any criminal activity or took part in any criminal enterprise and further deny they engaged in any misconduct whatsoever. Defendant Officers admit CPD Superintendent Garry McCarthy publicly stated, "There is

18

nobody involved other than the two officers who were arrested" and deny any remaining allegations in this paragraph.

**The City's "Code of Silence"**

62.     While the federal government was investigating Watts and his crew, a "code of silence" existed within the CPD.

**ANSWER:**   Defendant Officers deny they ever experienced, participated in, or observed a "code of silence" as they understand that term. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

63.     Under this code, police officers are expected to conceal each other's misconduct, in contravention of their sworn duties, and the penalties for breaking the code of silence within the CPD are severe.

**ANSWER:**   Defendant Officers deny they ever experienced, participated in, or observed a "code of silence" as they understand that term and therefore deny the allegations in this paragraph.

64.     As one CPD officer has explained, "[The Chicago Police Academy told officers] over and over again we do not break the code of silence. Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER:**   Defendant Officers lack knowledge or information sufficient to form a

19

belief as to the experience of the unidentified officer at the Chicago Police Academy. Defendant Officers deny they were ever instructed on, experienced, participated in, or observed a "code of silence" as they understand that term and therefore deny the remaining allegations in this paragraph.

65. Pursuant to this "code of silence," each of the Defendant Officers concealed from Mr. Jones information that Watts and his crew members were in fact engaged in a wide-ranging pattern of misconduct. Had this information been disclosed to Mr. Jones he would have used it to impeach the officers' accounts, which would have changed the outcome of the criminal proceedings instituted against him.

**ANSWER:** Defendant Officers deny they engaged in any misconduct or pattern of misconduct and deny that they experienced, participated in, or observed a "code of silence" as they understand that term, and therefore deny the allegations in this paragraph.

66. Also, consistent with this "code of silence," the few people who stood up to Watts and his crew and/or attempted to report his misconduct were either ignored or punished, while Watts and his crew continued to engage in misconduct with impunity.

**ANSWER:** Defendant Officers deny they engaged in any misconduct or pattern of misconduct and deny they experienced, participated in, or observed a "code of silence" as they understand that term, and therefore deny the allegations in this paragraph.

**The Careers of CPD Officers Daniel Echeverria and Shannon Spalding are Nearly Ruined**

67. In or around 2006, two Chicago police officers, Daniel Echeverria and Shannon Spalding, learned credible information from arrestees that Watts and his crew were engaged in

20

illegal drug activity.

**ANSWER:** Defendant Officers deny they were engaged in illegal drug activity and deny that there was credible information from arrestees that they were engaged in illegal drug activity. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

68. Officer Echeverria took the allegations seriously and reported them to a CPD supervisor. The supervisor made clear that he was not interested in hearing about the allegations, and he directed Echeverria not to document the allegations.

**ANSWER:** Defendant Officers deny they were engaged in illegal drug activity nd deny that there was credible information from arrestees that they were engaged in illegal drug activity. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

69. Echeverria and Spalding subsequently reported the allegations about Watts and his crew to the FBI. Soon thereafter, Echeverria and Spalding began cooperating with the FBI and actively assisting the FBI with its investigation of Watts and his crew.

**ANSWER:** Defendant Officers deny they engaged in any illegal activity or other misconduct and deny that there was credible information from arrestees that they were engaged in illegal drug activity. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

70. When their cooperation became known to officers within their CPD chain of command, Spalding and Echeverria were labeled "rats" within the Department, their lives were threatened, and they endured all manner of professional retaliation by members of the CPD.

21

**ANSWER:** Defendant Officers deny they were within Spaulding and Echeverria's chain of command, labeled them rats, threatened their lives or retaliated against them for any reason. Defendant Officers lack knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

71. Spalding and Echeverria subsequently sued the City for the retaliation they suffered for blowing the whistle on Watts and his crew. On the eve of trial in that case, the City settled for $2 million.

**ANSWER:** Defendant Officers deny they were engaged in any illegal activity. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### CPD Officer Michael Spaargaren's Life is Threatened

72. Sometime in the mid-2000s, CPD Officer Michael Spaargaren was assigned to work with Watts in public housing.

**ANSWER:** Defendant Officers admit that Spaargaren was a Chicago police Officer and that Watts was a sergeant of a team on which Spaargaren worked. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

73. Spaargaren observed that Watts did not inventory drugs and money that officers seized during arrests, and Spaargaren confronted Watts about the misconduct.

**ANSWER:** Defendant Officers deny they engaged in any misconduct. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

22

74. In response, Watts threatened to fabricate allegations of misconduct against Spaargaren and made veiled threats to kill him.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

75. A CPD lieutenant in the chain of command—James Spratte—subsequently warned Spaargaren to keep his mouth shut or his life would be in danger.

**ANSWER:** Defendant Officers, on information and belief, deny the allegations in this paragraph.

76. Fearful for his life, Spaargaren opted to take a one-and-a-half-year leave of absence from CPD rather than continue to work under Watts.

**ANSWER:** Defendant Officers, on information and belief, deny the allegations in this paragraph.

### Citizen Complaints Went Nowhere

77. Defendants Watts, Mohammed, and other members of Watts's tactical team accumulated hundreds of citizen complaints concerning violations of citizens' civil rights over the years. These complaints began well before the misconduct Defendants committed against Mr. Jones. Despite the shocking number of citizen complaints directed against Watts and his team, the City did nothing to stop the misconduct.

**ANSWER:** Defendant Officers admit they have been the subjects of citizen complaints during the course of their careers. Defendant Officers deny they engaged in any misconduct against citizens, including Plaintiff, and therefore deny the remaining allegations in this paragraph.

23

78.     As for the complaints that the City bothered to investigate, the City often failed to seek out known witnesses and corroborating evidence and even ignored corroborating evidence—instead, the City would side with officers' boilerplate denials over complainants and their witnesses, no matter how many citizens came forward with the same type of complaint.

**ANSWER:**     Defendant Officers deny they engaged in any misconduct against citizens, including Plaintiff, and therefore deny the allegations in this paragraph.

79.     The Illinois Appellate Court criticized the City for its utter failure to address the misconduct of Watts and his team.

**ANSWER:**     Defendant Officers deny they engaged in any misconduct. Defendant Officers lack information or belief sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

80.     In multiple instances, the City actually assigned Watts to investigate complaints made against him or members of the team he supervised.

**ANSWER:**     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

## The City Turns a Blind Eye to the Clear Pattern of Alleged Misconduct that Emerged from Watts and His Crew

81.     Despite all the evidence that was amassed over the years of a pattern and practice of criminal misconduct by Defendant Officers, the City never conducted its own investigation of the clear pattern that emerged.

**ANSWER:**     Defendant Officers deny they engaged in any misconduct, criminal or otherwise, and therefore deny the allegations in this paragraph directed against them. Defendant

24

Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

82.     As City officials were aware, the purpose of the FBI investigation was to investigate and prosecute criminal activity, not to impose discipline and control of the CPD.

**ANSWER:**   Defendant Officers deny they engaged in any misconduct, criminal or otherwise. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

83.     Nothing about the FBI investigation relieved the City of its fundamental responsibility to supervise, discipline, and control its officers.

**ANSWER:**   Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

84.     Nevertheless, the City completely abdicated this responsibility, allowing the widespread misconduct to continue undeterred throughout the FBI's criminal investigation of Watts and his crew.

**ANSWER:**   Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

85.     During the FBI investigation, which spanned at least eight years, City officials had reason to believe that Watts and his crew continued engaging in criminal activity on the

25

streets—extorting drug dealers and framing citizens for crimes they did not commit—yet City officials took no steps to prevent these abuses from occurring.

**ANSWER:** Defendant Officers deny they engaged in any misconduct, criminal or otherwise, including extorting drug dealers and framing citizens of crimes they did not commit, and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

86. Instead, City officials let officers on Watts's crew continue to pursue criminal charges against citizens like Mr. Jones and continue to fabricate false police reports and testify falsely against citizens like Mr. Jones.

**ANSWER:** Defendant Officers deny they engaged in any misconduct, criminal or otherwise, including testifying falsely against persons who broke the law, like Plaintiff, and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

87. City officials withheld information they had about the officers' pattern of transgressions—information that citizens like Mr. Jones could have used to impeach the corrupt officers and defend against the bogus criminal charges brought against them.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

26

**Exonerations**

88.     After the extensive scope of Defendant Watts and his crew's corruption came to light, on September 12, 2017, a group of similarly situated innocent victims filed a Consolidated Petition for Relief From Judgment and To Vacate Convictions Pursuant to 735 ILCS 5/2-1401 ("Consolidated Petition").

**ANSWER:**     Defendant Officers, on information or belief, admit that a Consolidated Petition for Relief From Judgment and To Vacate Convictions Pursuant to 735 ILCS 5/2-1401 was filed on September 12, 2017. Defendant Officers deny they engaged in any misconduct and therefore deny the remaining allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

89.     On November 16, 2017, upon the State's motion, Judge LeRoy K. Martin, Jr. vacated and *nolle prossed* all of the convictions related to the fifteen (15) Petitioners named in the Consolidated Petition.

**ANSWER:**     Defendant Officers, on information or belief, admit the convictions were vacated and the State *nolle prossed* all charges related to the convictions. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph directed against them.

90.     In commenting on the extraordinary decision to agree to vacate all the convictions tied to Watts and his team, the head of CCSAO's Conviction Integrity Unit, Mark Rotert, stated that, "In these cases, we concluded, unfortunately, that police were not being truthful and we couldn't have confidence in the integrity of their reports and their testimony."

27

**ANSWER:** Defendant Officers, on information and belief, admit Rotert made the statement quoted in this paragraph, but deny that statement was truthful as to their conduct. Defendant Officers deny the allegations made by Rotert and therefore deny any remaining allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

91. On September 24, 2018, eighteen (18) other similarly situated innocent victims were given a semblance of justice. Upon the State's motion, Judge LeRoy K. Martin, Jr. vacated 23 convictions, and the State *nolle prossed* all charges related to the convictions stemming from Watts and his team's wrongful arrests.

**ANSWER:** Defendant Officers, on information and belief, admit that upon the State's motion, Judge LeRoy K. Martin, Jr. vacated 23 convictions and the State *nolle prossed* all charges related to those convictions on September 24, 2018. Defendant Officers deny they engaged in any misconduct and therefore deny the remaining allegations in this paragraph.

92. At a press conference where she stood side-by-side with many of the exonerated, Cook County State's Attorney-Elect Kimberly Foxx stated that "[t]he system owes an apology to the men who stand behind us."

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

93. On November 2, 2018, seven (7) more victims had eight (8) additional

28

convictions voluntarily dismissed by the CCSAO.

**ANSWER:** Defendant Officers, on information or belief, admit that on November 2, 2018, eight convictions of seven individuals were vacated and the State *nolle prossed* the charges related to the convictions. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph directed against them.

94. In a press release, CCSA Foxx stated that the "pattern of misconduct" by Watts and his team caused her "to lose confidence in the initial arrests and the validity of these convictions."

**ANSWER:** Defendant Officers deny they engaged in a "pattern of misconduct" as alleged in this paragraph and deny any other allegations directed at them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

95. Referring to the exonerees as "victims," Ms. Foxx wished them "a path forward in healing and justice."

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny any allegations in this paragraph directed at them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

96. The CCSAO has since voluntarily dismissed additional convictions.

**ANSWER:** Defendant Officers admit that the convictions of additional individuals were vacated and the State *nolle prossed* the charges related to the convictions. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in

29

this paragraph directed against them.

97.     On February 24, 2020, after another mass dismissal and in reference to the Watts scandal, Ms. Foxx stated: "I think it's important that we acknowledge the harm that was caused when we talk about these cases. It's not just these men. It's the erosion of the trust in the justice system when we allow for those [men] to be wrongfully convicted based on the misdeeds of corrupt law enforcement."

**ANSWER:**   Defendant Officers lack knowledge or information sufficient to form a belief as to whether Ms. Foxx made this statement. Defendant Officers deny they engaged in any misconduct that resulted in a wrongful conviction, deny that they were corrupt, and deny any remaining allegations in this paragraph directed against them.

98.     On December 15, 2020, after another mass dismissal and in reference to the Watts scandal, Ms. Foxx stated: "The seeds of distrust for our criminal justice system run deeply in communities most impacted by violence because of people in power like Sergeant Watts and his cronies who targeted and criminally preyed on these communities, leaving these neighborhoods feeling like their voice didn't matter." Regarding the exonerations, Ms. Foxx went on to state that it is "always the right time to do the right thing" and "never too late to deliver justice" to the Watts-related victims.

**ANSWER:**   Defendant Officers, on information and belief, admit that additional convictions of others were vacated on or about December 15, 2020. Defendant Officers lack knowledge or information sufficient to form a belief as to what Ms. Foxx stated. Defendant Officers deny they engaged in any misconduct, criminal or otherwise, and therefore deny any remaining allegations directed against them.

30

99. On February 19, 2021, after yet another mass dismissal, Ms. Foxx stated: "Vacating the convictions of these nine people today who were targeted by former Police Sergeant Watts provides just a fraction of relief for those who spent time in prison, away from their families, as we will never be able to give them that time back."

**ANSWER:** Defendant Officers admit, on information and belief, that additional convictions were vacated on February 19, 2021. Defendant Officers lack knowledge or information sufficient to form a belief as to whether Ms. Foxx made the statement attributed to her in this paragraph. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph directed against them.

100. In a press release on November 4, 2021—when five (5) more convictions were dismissed—Ms. Foxx stated: "As prosecutors, we know that harm was caused …Today is a step towards righting the wrongs of the past and giving these individuals their names back."

**ANSWER:** Defendant Officers admit, on information and belief, that additional convictions were vacated on November 4, 2021. Defendant Officers lack knowledge or information sufficient to form a belief as to whether Ms. Foxx made the statement attributed to her in this paragraph. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

101. On February 1, 2022, during a hearing that resulted in twenty (20) more dismissals of Watts-related convictions, the Presiding Judge of the Cook County Criminal Courts, Erica L. Reddick, called the Watts era "a blight on the criminal justice system."

**ANSWER:** Defendant Officers admit, on information and belief, that additional convictions were vacated by the Circuit Court of Cook County on February 1, 2022. Defendant

31

Officers lack knowledge or information sufficient to form a belief as to whether Judge Reddick made the statement attributed to her in this paragraph. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

102. The CCSAO will no longer call certain members of Watts's crew, including at least some of the Defendant Officers named herein, as witnesses in any pending or future matters due to concerns about their credibility and alleged involvement in misconduct.

**ANSWER:** Defendant Officers, on information and belief, admit the existence of correspondence dated November 17, 2017 from Joe Magats, then Chief of the Criminal Prosecutions Bureau of the CCSAO, to Charise Valente at the Chicago Police Department's Office of Legal Affairs, pertaining to certain individuals. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

103. In November 2017, former Superintendent of the Chicago Police Department Eddie T. Johnson placed multiple members of Watts's crew on desk duty.

**ANSWER:** Defendant Officers admit that, at certain times, they have performed administrative duties. Defendant Officers deny they engaged in any misconduct and therefore deny the remaining allegations in this paragraph.

104. Mr. Jones has now been exonerated of the crime of which he was convicted and for which he should never have been arrested in the first place.

**ANSWER:** Defendant Officers, on information and belief, admit Plaintiff received a certificate of innocence for his 2008 conviction. Defendant Officers deny Plaintiff is innocent and further deny any remaining allegations in this paragraph.

**Mr. Jones's Damages**

105.     Because of the Defendants' acts and omissions, Mr. Jones was subjected to police harassment and unfair criminal proceedings.

**ANSWER:**     Defendant Officers deny the allegations in this paragraph.

106.     The Defendant Officers' misconduct and false accusations subjected Mr. Jones to a felony conviction and wrongful confinement before he was exonerated.

**ANSWER:**     Defendant Officers deny the allegations in this paragraph.

107.     The pain and suffering caused by being wrongfully convicted has been significant. During his detention in prison, Mr. Jones was deprived of the everyday pleasures of basic human life, and his freedom was taken from him. Since then, Mr. Jones has had to live with a felony record he did not deserve.

**ANSWER:**     Defendant Officers deny the allegations in this paragraph.

108.     As a result of the foregoing, Mr. Jones suffered damages proximately caused by Defendants' wrongdoing.

**ANSWER:**     Defendant Officers deny the allegations in this paragraph.

**Count I: 42 U.S.C. § 1983 – Due Process**

109.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

110.     In the manner described more fully above, Defendant Officers, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiff of his

33

constitutional right to due process and a fair trial.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto and deny the remaining allegations in this paragraph.

111. In the manner described more fully above, Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, as well as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto and deny the remaining allegations in this paragraph.

112. Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, denying him of his constitutional right to due process and a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

113. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Mr. Jones's clear innocence.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

114. Defendants' actions were taken under color of law and within the scope of their employment.

34

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers admit that at all relevant times they were acting under color of law and within the scope of their employment. Defendant Officers deny they engaged in any misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, upon information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting within the scope of their employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

115.    The City of Chicago is also directly liable for the injuries described in this Count because the City and CPD maintained official policies and customs that were the moving force behind the violation of Plaintiff's rights, and also because the actions of the final policymaking officials for Defendant City of Chicago and CPD were the moving force behind the violation of Plaintiff's rights.

**ANSWER:** Defendant Officers deny that they violated Plaintiff's rights or caused him injury or engaged in any of the alleged misconduct, and therefore deny the allegations in this paragraph.

116.    At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago maintained a system that violated the due process rights of criminal defendants like Mr. Jones by concealing exculpatory evidence of Chicago police officers' patterns of misconduct.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

117. In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago had notice of a widespread practice by its officers and agents under which criminal suspects, such as Mr. Jones, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, and were deprived of liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph where they apply to other defendants.

118. As a matter of both policy and practice, Defendant City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control, and discipline its police officers, such that its failure to do so manifests deliberate indifference. Defendant City's practices lead police officers in the City of Chicago to believe that their actions will never be scrutinized and, in that way, directly encourage further abuses such as those that Mr. Jones endured.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore

36

deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

119. The above-described widespread practices, which were so well settled as to constitute the de facto policy of the City of Chicago, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. These widespread practices were allowed to flourish because Defendant City and the CPD declined to implement sufficient policies or training, even though the need for such policies and training was obvious. Defendant City and the CPD also declined to implement any legitimate mechanism for oversight or punishment of officers, thereby leading officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

120. Furthermore, the misconduct described in this Complaint was undertaken pursuant to the policy and practices of Defendant City in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago and the CPD, or were actually committed by persons with such final policymaking authority.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge

37

or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

121. Indeed, municipal policymakers have long been aware of Defendant City's policy and practice of failing to properly train, monitor, investigate, and discipline misconduct by its police officers, but have failed to take action to remedy the problem.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny any allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

122. For example, at a City Council hearing on September 28, 1999, in response to two high-profile unjustified police shootings, then-Superintendent Terry Hillard noted the need for better in-service training on the use of force, early detection of potential problem officers, and officer accountability for the use of force.

**ANSWER:** Defendants Officers deny they engaged in any misconduct and therefore deny any allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

123. In June 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a

38

belief as to whether in June 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct." Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

124.    In 2001, the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed the findings of that resolution, concluding that the CPD lacked many of the basic tools necessary to identify, monitor, punish, and prevent police misconduct. The JCGC findings were presented to Mayor Richard Daley, Superintendent Hillard, and the Chicago Police Board.

**ANSWER:**    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

125.    Despite municipal policymakers' knowledge of the City's failed policies and practices to adequately train, supervise, investigate, discipline, and control its police officers, nothing was done to remedy these problems.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

126.    As a result, the CPD has continued to respond to complaints of police

39

misconduct inadequately and with undue delay and has continued to recommend discipline in a disproportionately small number of cases.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

127. Indeed, by its own admissions, more than 99% of the time when a citizen complains that his or her civil rights were violated by police officers, the City sides with the police officer and concludes that no violation occurred.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph where they apply to other defendants.

128. Before she was elected Mayor of the City of Chicago, then-Police Board Chair Lori Lightfoot made clear that "[a]ny of those officers [on Watts team] who remain on the job must be quickly brought to justice through criminal prosecution and/or disciplinary action."

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to whether Ms. Lightfoot made the statement attributed to her in this paragraph. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

129. Yet, as of the filing of this complaint, the Lightfoot administration has not taken the type of action that Ms. Lightfoot demanded before she became mayor.

40

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

130. Notably, Defendant Watts and his crew are not the first Chicago police officers who were allowed to abuse citizens with impunity over a period of years while the City turned a blind eye.

**ANSWER:** Defendant Officers deny they abused citizens with impunity over a period of years and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

131. For instance, in 2001, Chicago Police Officer Joseph Miedzianowski was convicted on federal crime charges, including racketeering and drug conspiracy. The jury found that Miedzianowski engaged in corruption for much of his 22-year police career, using street informants to shake down drug dealers and sell drugs.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

132. Miedzianowski, like Defendant Officers in this case, had accumulated scores of complaints over the years. As the Appellate Court has stated, the Defendant City "did nothing to slow down the criminals. Instead, it informed the corrupt officers about the complaint and named the source." The Defendant City deemed such complaints unfounded or not sustained.

41

**ANSWER:** Defendant Officers admit they were the subjects of complaints during the course of their careers. Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

133.    Likewise, in 2011, Chicago police officer Jerome Finnigan was convicted and sentenced on federal criminal charges, including a charge of attempting to hire someone to kill a police officer who Finnigan believed would be a witness against him on his own corruption charges in state court.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

134.    Finnigan was part of a group of officers in Defendant City's Special Operations Section that carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER:** Defendant Officers deny they engaged in any criminal activity, including robberies, home invasions, unlawful searches and seizures, and other crimes, or other misconduct and therefore deny any allegations directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

135.    Finnigan and his crew engaged in their misconduct at about the same time that Mr. Jones was targeted by Defendant Watts and his crew.

**ANSWER:** Defendant Officers deny they targeted Plaintiff as they understand that

42

term or otherwise engaged in any misconduct, and therefore deny the allegations in this paragraph.

136. Finnigan, like Defendant Officers in this case, had accumulated scores of citizen complaints over the years, which Defendant City routinely deemed unfounded or not sustained.

**ANSWER:** Defendant Officers admit they have been the subject of citizen complaints during the course of their careers. Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph directed against them. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

137. At his sentencing hearing in 2011, Finnigan stated, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to what Finnigan said at any sentencing hearing. Defendant Officers deny they engaged in any misconduct and therefore deny any remaining allegations in this paragraph.

138. In the case of *Klipfel v. Bentsen*, No. 94-cv-6415 (N.D. Ill), a federal jury found that, as of 1994, the CPD maintained a code of silence that facilitated misconduct committed by Miedzianowski.

**ANSWER:** Defendant Officers deny they engaged in any misconduct or experienced, participated in, or observed a "code of silence" as they understand that term. Defendant Officers lack knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

43

139.    Likewise, in the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER:**    Defendant Officers deny they experienced, participated in, or observed a "code of silence" as they understand that term. Defendant Officers lack knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

140.    The same code of silence in place at the CPD during the time periods at issue in the *Klipfel* case and the *Obrycka* case was also in place during the times complained of herein.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct or experienced, participated in, or observed a "code of silence" as they understand that term. Defendant Officers further deny plaintiff suffered the abuse described above, and therefore deny the remaining allegations in this paragraph.

141.    Indeed, the problems found to exist by the jury in *Klipfel* and *Obrycka* continue to this day. In December 2015, then-Mayor Rahm Emanuel acknowledged that a "code of silence" exists within the CPD that encourages cover-ups of police misconduct, and that the City's attempts to deal with police abuse and corruption have never been adequate.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct or experienced, participated in, or observed a "code of silence" as they understand that term. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

142.    Even more recently, in January 2020, the CPD's then-interim head Charlie Beck also acknowledged the code of silence.

44

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to whether the then interim head of the Chicago Police Department Charlie Beck made such a statement. Defendant Officers deny they experienced, participated in, or observed a "code of silence" as they understand that term, and therefore deny any remaining allegations in this paragraph.

143. The policies, practices, and customs set forth above were the moving force behind the constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous injuries and damages set forth above.

**ANSWER:** Defendant Officers deny they committed any constitutional violations in this case or caused any injuries or damages to Plaintiff and therefore deny the remaining allegations in this paragraph.

144. Defendant City's investigation of complaints is characterized by unreasonably long delays, despite the relatively straightforward nature of many misconduct claims.

**ANSWER:** Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

145. Although Defendant City has long been aware that its supervision, training, and discipline of police officers is entirely inadequate, Defendant City has not enacted any substantive measures to address that deficiency.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph.

146. Instead, Defendant City continues to inadequately investigate citizen complaints and fails to take action against officers when necessary. It has also failed to modify its officer

45

training programs to reduce misconduct against Chicago residents or to implement a system to identify and track repeat offenders, districts, or units.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph.

147. Plaintiff's injuries were caused by CPD officers, agents, and employees of Defendant City of Chicago, including, but not limited to, the individually named Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and therefore deny the allegations in this paragraph.

**Count II: 42 U.S.C. § 1983 – Malicious Prosecution and Unlawful Pretrial Detention – Fourth and Fourteenth Amendment**

148. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

149. In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with each other, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the

46

preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto and deny the remaining allegations in this paragraph.

150.    In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:**    Defendant Officers deny the allegations in this paragraph.

151.    The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

**ANSWER:**    Defendant Officers deny the allegations in this paragraph.

152.    Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty.

**ANSWER:**    Defendant Officers deny the allegations in this paragraph.

153.    In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent. This was accomplished through Defendants' fabrication and suppression of evidence.

**ANSWER:**    Defendant Officers deny the allegations in this paragraph.

154.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's clear innocence.

**ANSWER:**    Defendant Officers deny the allegations in this paragraph.

155.    The Defendants' actions were taken under color of law and within the scope of

47

their employment.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers admit that at all relevant times they were acting under color of law and within the scope of their employment. Defendant Officers deny they engaged in any misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, on information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting within the scope of their employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

156. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and deny the allegations in this paragraph.

157. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and deny the allegations in this paragraph.

48

## Count III: 42 U.S.C. § 1983 – Failure to Intervene

158.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

159.     In the manner described more fully above, during the constitutional violations described herein, Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:**     To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto and deny the remaining allegations in this paragraph.

160.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER:**     Defendant Officers deny they engaged in any misconduct and deny the remaining allegations in this paragraph.

161.     The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER:**     To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers admit that at all relevant times they were acting under color of law and within the scope of their employment. Defendant Officers deny they engaged in any

49

misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, on information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting within the scope of their employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

162.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct and deny the remaining allegations in this paragraph.

163.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants, who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct and deny the remaining allegations in this paragraph.

### Count IV: 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

164.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

50

165.    Prior to Plaintiff's conviction, all of the Defendant Officers, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described above.

**ANSWER:**    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers deny the remaining allegations in this paragraph.

166.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of his rights.

**ANSWER:**    Defendant Officers deny the allegations in this paragraph.

167.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:**    Defendant Officers deny the allegations in this paragraph.

168.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct and further deny the remaining allegations in this paragraph.

169.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER:**    To the extent this paragraph refers to or relies on allegations made in the

51

preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers admit that at all relevant times they were acting under color of law and within the scope of their employment. Defendant Officers deny they engaged in any misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, on information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting within the scope of their employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

170.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct and further deny the remaining allegations in this paragraph.

171.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER:**    Defendant Officers deny they engaged in any misconduct and further deny the remaining allegations in this paragraph.

### Count V: Illinois Law – Malicious Prosecution

172.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Defendant Officers adopt and restate their answers and responses to each

paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

173. In the manner described more fully above, Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto and deny the remaining allegations in this paragraph.

174. In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

175. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers admit that at all relevant times they were acting under color of law and within the scope of their employment. Defendant Officers deny they engaged in any misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, on information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting within the scope of their employment as Chicago police officers at those times. Defendant

Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

176. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and further deny the remaining allegations in this paragraph.

### Count VI: Illinois Law – Intentional Infliction of Emotional Distress

177. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

178. The actions, omissions, and conduct of Defendant Officers, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto and deny the remaining allegations in this paragraph.

179. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the

54

preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers admit they were employees of the City of Chicago, acting at all relevant times within the scope of their employment and under color of law. Defendant Officers deny they engaged in any misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, on information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting within the scope of their employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

180.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**     Defendant Officers deny they engaged in any misconduct and further deny the remaining allegations in this paragraph.

**Count VII: Illinois Law – Civil Conspiracy**

181.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

182.     As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to

55

accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of his rights.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto and deny the remaining allegations in this paragraph.

183. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:** Defendant Officers deny the allegations in this paragraph.

184. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and further deny the remaining allegations in this paragraph.

185. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendant Officers deny they engaged in any misconduct and further deny the remaining allegations in this paragraph.

### Count VIII: Illinois Law – Respondeat Superior

186. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated

56

herein.

187. While committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers admit they were employees of the City of Chicago, acting at all relevant times within the scope of their employment. Defendant Officers deny they engaged in any misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, on information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting in the scope of their employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

188. Defendant City of Chicago is liable as principal for all torts committed by their agents.

**ANSWER:** Defendant Officers admit that the City has certain statutory and common law obligations in connection with the conduct of its employees or agents. Defendant Officers deny they engaged in any misconduct or committed any torts against Plaintiff and further deny the remaining allegations in this paragraph.

### Count IX: Illinois Law – Indemnification

189. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Officers adopt and restate their answers and responses to each paragraph of the Complaint as and for its answer and response to this paragraph as if fully stated herein.

190. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

**ANSWER:** Defendant Officers admit that the City has certain statutory and common law obligations in connection with the conduct of its employees or agents. Defendant Officers deny they engaged in any misconduct or committed any torts against Plaintiff and further deny the remaining allegations in this paragraph.

191. Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**ANSWER:** To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, Defendant Officers adopt and restate their prior answers and responses thereto. Defendant Officers deny they committed the acts alleged in the preceding paragraphs. Defendant Officers admit they were employees of the City of Chicago, acting at all relevant times within the scope of their employment. Defendant Officers further deny they engaged in any misconduct. With respect to the remaining individual officer defendants, Defendant Officers admit, on information and belief, that those officers were employed by the City of Chicago as police officers during certain time periods alleged in Plaintiff's Complaint and were acting in the course and scope of their employment as Chicago police officers at those times. Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph.

## AFFIRMATIVE DEFENSES

Defendant Officers, without prejudice to their denials and all other statements in their answer, and without assuming the burden of proof as to matters that may not be affirmative defenses, state:

1.      At all times relevant to the events alleged in Plaintiff's Complaint, Defendant Officers were government officials, namely Chicago Police officers, who perform discretionary functions. At all relevant times, a reasonable officer objectively viewing the facts and circumstances then confronting Defendant Officers, could have believe their actions regarding their encounter with Plaintiff to be lawful, in light of clearly established law and the information that they possessed. Defendant Officers are therefore entitled to qualified immunity on Plaintiff's claims under federal law.

2.      Defendant Officers cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless they each individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

3.      Defendant Officers are absolutely immune from civil liability for any testimony they may have given in judicial proceedings in Plaintiff's underlying criminal cases. *See Briscoe v. LaHue*, 460 U.S. 325, 330-31, 103 S. Ct. 1108, 1113 (1983); *Jurgensen v. Haslinger*, 295 Ill. App. 3d 139, 141-42, 692 N.E.2d 347, 349-50 (3d Dist. 1998).

4.      Under the Illinois Tort Immunity Act, Defendant Officers are not liable for any of the state-law claims alleged because the decision as to what action to take with regard to Plaintiff

was a discretionary decision for which the Defendant Officers are immune from liability. 745 ILCS 10/2-201.

5. Defendant Officers are not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

6. Under the Illinois Tort Immunity Act, Defendant Officers are not liable under state law because a public employee, acting within the scope of his or her employment, is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

7. Under the Illinois Tort Immunity Act, Defendant Officers are not liable for any injury allegedly caused by instituting or prosecuting any judicial or administrative proceeding within the scope of his or her employment, unless he acted maliciously and without probable cause. 745 ILCS 10/2-208.

8. Plaintiff's claims are barred by the applicable statutes of limitations.

9. Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel.

10. To the extent Plaintiff has failed to mitigate any of his claimed injuries or damages, including his voluntary guilty plea, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle a plaintiff has a duty to mitigate his or her damages.

11. Plaintiff's Complaint fails to state cognizable claims for relief that are plausible on its face.

a.  Plaintiff fails to state a fabricated evidence-based due process claim in Count I because the allegedly fabricated evidence was not introduced against him at trial and did not cause his conviction;

b.  Even if otherwise actionable, Plaintiff's guilty plea defeats his fabricated evidence based-due process claim;

c.  Plaintiff fails to state a *Brady*-based due process claim in Count I because the allegations establish that no evidence subject to *Brady* was suppressed;

d.  To the extent Count II asserts a Fourteenth Amendment due process claim based on any pre-trial deprivation of liberty or asserts a federal malicious prosecution claim, those claims are not actionable as a matter of law; and

e.  Plaintiff's derivative failure to intervene and conspiracy claims are not actionable.

## JURY DEMAND

Defendant Officers respectfully request a trial by jury.

Dated: January 10, 2025.

Respectfully submitted,

*/s/ William E. Bazarek*

Special Assistant Corporation Counsel
One of the attorneys for *Defendant Officers*

Andrew M. Hale
William E. Bazarek
Anthony E. Zecchin
Kelly M. Olivier
Jason M. Marx

61

Hannah Beswick-Hale
HALE & MONICO LLC
53 W. Jackson Blvd., Suite 334
Chicago, Il 60604
Phone (312) 341-9656
Fax (312) 341-9646

## CERTIFICATE OF SERVICE

I, William E. Bazarek, hereby certify that on January 10, 2025, I electronically filed the forgoing, DEFENDANT OFFICERS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT, with the Clerk of the Court using the ECF system, which simultaneously served copies on all counsel of record via electronic notification.

*/s/ William E. Bazarek*